ELWELL
v.
PIERSON.

Rec. 1763.
Fol. 56.

Devise of Land as follows: "To my Son S. and his Heirs forever, provided that my said Son shall maintain Myself and his Mother during our Lives with sufficient and convenient Maintenance." Afterwards: "Also whereas it is expressed that my Son shall have this my Living to him and his forever, my Will and Meaning is, and I do hereby appoint my Grandson R.,

## Elwell *verf.* Pierson.

*(From Essex.)* (3)

THE Question in this Case was, whether Samuel, Son of the original Devisor, took an Estate Tail,

\* Vid. 4 Bac. Ab. 462, 463, top. (4)

---

(3) The estate sued for is described as "a neck of land in Glocester Harbour now called Pierson's Neck."

(4) Bac. Ab. Sheriff, O.

Tail, and if he did, whether the Plaintiff is fole Heir in Tail of Samuel, being eldeft Son of eldeft Son all along.

The Words of the Will are thefe: "I give to "Samuel Elwell the Houfe I now live in," &c.

Afterwards: "I give all my faid Houfing &c. "expreffed, to him my faid Son Samuel, and *his* "*Heirs forever*, provided that my faid Son fhall "maintain Myfelf and his Mother during our Lives "with fufficient and convenient Maintenance."

Afterwards: "Alfo whereas it is above expreffed "that my Son Samuel fhall have this my Living "above faid to him and his forever, my Will and "Meaning is, and I do hereby appoint my Grand- "fon Robert, Son of faid Samuel, to be the next "immediate Heir unto this my Living after his "Father, my faid Son Samuel, to enjoy the fame to "him and his Heirs forever. And in Cafe that faid "Robert do die without Heir, it ·fhall then fall to "the next eldeft of my Grandfons furviving, and fo "in like Cafe of Mortality one from another to the "next eldeft of my Grandfons furviving."

*Mr. Thacher for the Tail.* It is objeded that there were but two Witneffes to the Will. At that Time the Law required but two. The Statute of Frauds was never fuppofed to extend here, till we made a like Law here. (5) Vid. Old Colony Laws, 158.

*1763.*

ELWELL
*v.*
PIERSON.

Son of faid S., to be the next immediate Heir unto this my Living after his Father, to enjoy the fame to him and his Heirs forever. And in Cafe that faid R. do die without Heir, it fhall then fall to the next eldeft of my Grandfons furviving, and fo in like Cafe of Mortality, one from another to the next eldeft of my Grandfons furviving." *Held*, that S. took an Eftate in Fee Simple. *It feems*, that but for the Charge of Maintenance, S. would have taken an Eftate Tail.

---

(5) Prov. St. 4 W. & M.    Anc. Chart. 233.

1763.

ELWELL
*v.*
PIERSON.

158. (6)   The Queſtion is, whether Samuel took an Eſtate Tail, by the Words of the Will.   Great Condeſcenſion is given to Wills, and Words, which in Acts executed in the Lifetime would not make Eſtates Tail, will make them in Wills, becauſe Teſtators are ſuppoſed to be *inops conſilii*, and Lord Holt obſerves that there were no ſuch Conveyances at Common Law, but by Statute.   The Teſtator's Intent is to be the Rule of Conſtruction, if agreeable to Rules of Law.   The firſt Deviſe is an Inheritance; then he explains his Grandſon Robert to be the next immediate Heir of his ſaid Son Samuel; he does not retract, but only directs how that Inheritance ſhall go.   The Intent appears from this alſo — He ſays, the next eldeſt Brother ſhall inherit for want of Heirs; now he could not die without Heirs, while he had any Brothers, whence it appears he excluded Brothers from his Idea of Heirs in this Caſe, and ſo could only mean Heirs of the Body.   There is a Difference between the Remainder over being given to a Stranger, and to one of Kin; in the firſt Caſe it cannot be explanatory of what Heirs are meant; in the laſt it is.   9 Co. 128, *Sonday's Caſe.*   Cro. Ja. 415, *Webb & Hearing.* Id. 448, *King* vs. *Rumball.*   Id. 695, *Chaddock* vs. *Cowley.*   1 Ld. Raym. 569, *Nottingham* vs. *Jennings.* Comyns, 539, *Brice* vs. *Smith.*   Ld. Talbot, 1, *Tyte* vs. *Willis.*

The only Queſtion remaining is, whether this Eſtate Tail firſt veſted in Samuel the Son, or Robert

---

(6) Col. Laws, ed. of 1672.   Anc. Chart. 204, § 2.

ert the Grandfon; I think in Samuel, firft, becaufe Samuel had an Inheritance by the firft Words; Secondly, becaufe the Teftator appoints Robert his next immediate Heir; this is furely fhowing how the Inheritance fhall be limited, and it is as it would be limited by Law, fuppofing it an Eftate Tail. The Inheritance of Samuel fhall by no means be taken away, if the Will can be conftrued otherwife, as in this Cafe the Words do not make an Eftate for Life only, but a Limitation.

*Mr. Gridley.* The Queftion is, whether Samuel took a Fee Simple or Tail; the firft Words of the Will give him a Fee, but afterwards fay Robert fhall be his Heir: We all agree as to the Fee — we fay the other Words fhew the Intent. If Samuel had a Fee, he could convey it, and Robert would not be his Heir; in the fecond Place, every Word fhall be operative if poffible; whereas on their Suppofition the laft Words are of no Force. Robert on their Suppofition fhould take only as the Law gave him, and Robert took as a Purchafer, which he could not do unlefs Samuel took an Eftate for Life : If a Fee, he could not — if he took a Fee, the laft Words go for Nothing.

*Auchmuty againft the Tail.* Their Authorities do not reach this Cafe, the Intent of the Teftator is to be followed, but the Intent muft be clear and muft be agreeable to the Rules of Law. The Fee is at firft plainly given; and where an exprefs Eftate is given, nothing by Implication fhall take it away. 1 Salk. 236, *Popham* vs. *Banfield.* Cro. Cha. 368, *Spirt* vs. *Bence.* 6 Co. 16, *Wild's Cafe.* Where an

an Implication affects an Heir at Law, that Implication muſt be very ſtrong. 2 Bac. 66, Tit. Deviſe.

I'll conſider the Force of the Words in the Will, and whether thoſe Words operate ſo ſtrongly as to turn the plain Fee Simple into a Tail. If Robert died and left Iſſue, well — but if not, then to the next eldeſt Grandſon, which is not the Courſe of Tails; ſo that the Teſtator's meaning cannot be collected from theſe Words; and if a Man ſhall try to make ſuch an Eſtate as the Law never made, I take it to be utterly void. I ſhall ſhew the Words, pointing out the next immediate Heir a meer Nullity. The Grandſon of an younger Son may be an elder Grandſon than thoſe of an elder, which is not agreeable to Tail.

*Ch. Juſt.* *Quære* — Whether the ſecond Son of an eldeſt Son may not be called an elder Grandſon, than an elder Grandſon of a younger Son?

*Mr. Auchmuty.* This with vulgar Minds would not be a natural Thought. I think if he has any Eſtate, it is a Fee Simple. Cro. Jam. 590, *Pells* vs. *Brown.* (This Caſe he largely compared with the Caſe at Bar.) The ordering him to maintain his Mother amounts to his ordering him to pay her a Sum in groſs, which is allowed to cauſe a Fee Simple. 2 Bacon, 54. (7) 3 Rep. 31, a. 1 Lill. 451. The true Diſtinction is between a Sum to be paid out

---

(7) Bac. Ab. Deviſe, C.

1763.

ELWELL
*v.*
PIERSON.

out of the Rents, and a Sum in grofs, which may be greater. But fuppofing the Cafe to be doubtful, as they are the Plaintiffs, I take it to be incumbent upon them to make out a clear Title.

*Mr. Gridley.* 2 Bacon, 62. (8)  With Regard to the Diſheriſon of the Heir, that is not in this Cafe to be confidered — if it is the Mind of the Teſtator, that is the Rule. By the firſt Part Samuel was to have had a Fee Simple, but ſo as not to exclude Robert; 'tis plain he intended Robert ſhould have the Eſtate. Samuel muſt either have a Fee Simple, Tail or an Eſtate for Life: If for Life, how is it to him and his Heirs ? — if in Fee, what has Robert ? The laſt Clauſe confirms my Opinion, it muſt be ſuppoſed that by eldeſt Grandfon he intended Grandfon by Samuel; this is the natural Courſe, that if Robert died, it ſhould go to the Brothers of Robert, other Children of Samuel.

*Ch. Juſt.* Is it not better firſt to make it an Eſtate Tail in Samuel, that it ſhould rather go to theſe, than other Grandfons, than becauſe it is thus divided, that therefore it is an Eſtate Tail ?

*Mr. Gridley.* Cafes in Equity, 184, Cafe 28, *Shaw* vs. *Weigh.* Cro. Cha. 57. As for the Cafe *Pells & Brown,* here is nothing like a Limitation; Upon his Suppofition it tends to ſuch a Perpetuity as the Law abhors, it ſhould have been " if Sam- uel die without Iſſue;" here it is " if Robert." With

---

(8) Bac. Ab. Devife, D.

1763.

ELWELL
v.
PIERSON.

With Regard to the Maintenance, if there is a Doubt, what the Eftate is, it fhall be a Fee Simple, but never was any Maintenance conftrued to make a Fee Simple, when a clear Tail was : Maintenance in fome Tails is good.

The Court chofe to confult upon the Matter, and fo Judgment was adjourned to Auguft Term, where the Chief Juftice delivered the Opinion of the Court, which he faid was unanimous that Samuel by the Words would have taken a Tail ; but that the Burden and Duty of Maintenance made it a Fee Simple. (9)

———◆———

## Ruffel verf. Oakes.

———————

(9) It would feem, however, that the Court muft have confidered the intent of the teftator to be doubtful, as otherwife it would be difficult to anfwer Mr. Gridley's pofition that " never was any maintenance conftrued to make a fee-fimple when a clear tail was." 2 Jarman on Wills, 172.

